May it please this Court. My name is Jessica Buell and I represent the petitioner, Mr. Carlos Francia. I would like to reserve three minutes for review. With this petition to review, this Court needs to decide if an individual who has resided in the United States since he was an infant can be deported for a violation of the Oregon Misdemeanor Statute for sexual contact with a person just shy of 18. How do we know just shy of 18? Is that in the record? The statute itself specifies that the person would need to be under 18 and there's no other reference to the age. So under Valencia. That's what I need to hear. Under Valencia, this Court needs to presume that she was just shy, one day shy of 18. Under Valencia, okay. That's correct. And also Lopez-Solis. For a state criminal conviction to be classified as sexual abuse of a minor, it must prohibit behavior that is either physically abusive or psychologically abusive. There are five cases that control the outcome here. Basra Martinez, Lopez-Solis, Afridi, Pilar Escalon, and Barone Medina. Before you go there, could you just establish that we don't know the age of the victim? So we assume she was a day short of 18. The record establishes how old your client was, doesn't it? The record, the plea agreement does specify that he was 23 at the time of the offense. And doesn't our case law suggest that when there's an age differential of that magnitude, that the element of coercion and intimidation is inherent in the age gap and that that is sufficient, therefore, to meet the sexual abuse? In fact, the case law of the Ninth Circuit, in our case, there's a five-year age span. The case law of the Ninth Circuit is that with a four or five-year age span, it is not inherently abusive. What case holds that? In the case of Basra Martinez, there is a five-year age span, and in Lopez-Solis, there is a four-year age span. The BIA case, BFD, was distinct because in that case, the actor was 37 years old, and the statute itself required a seven to eight-year age span. Just this morning, we received, I believe, from your opponent, the case of Morales v. Gonzalez, decided by the Ninth Circuit here in Seattle on February 27, 2007. Are you familiar with that case? And that case goes to my second argument regarding whether this is a crime involving all turpitude, so it doesn't impact the sexual abuse of a minor analysis. And if this Court agrees with Petitioner under either argument, the petition should be granted. What do you do about Afridi? Excuse me? What do you do about Afridi? Afridi is distinct from this case because in Afridi, the statute required sexual intercourse, and under Lopez-Solis and other cases from the circuit, the Ninth Circuit has specified that that would be a physically abusive act. But Afridi says quite a bit more than that. Afridi says, look, the INS has come up with a definition, and we defer to it, and the definition the INS has come up with is quite broad and clearly covers your client's case. We give Chevron deference to the INS's definition. That's what Afridi says. So we compare the crime of conviction with the definition adopted by the INS and ask whether this is a, whether there's a match there, and it looks like there's a match. I don't see how you get past Afridi. I have two responses to your question, Your Honor. Under Afridi, the BIA itself in that case had referred to its own decision of Madero-Rodriguez-Rodriguez. In Madero-Rodriguez-Rodriguez, the BIA had given a guide, and it specifically said it was not adopting that as a definitive definition. But that guide is consistent with what I'm arguing here because that guide said that the abusive element should be either physical or meant to maltreatment. Secondly, in the case of Zidano-Vieira, the, that was an immigration case, and they held that... You haven't finished your first point. I don't understand what the point of your first point is. Madero, the guideline in Madero-Rodriguez-Rodriguez was not a definitive definition. It was a guide that they used in that case. Okay, so they used the same guide in this case. I don't understand. And it's consistent with what I'm arguing because that guide is that the abusive element should either be physical or mental maltreatment. In Afridi, it was physical maltreatment based on the statute at hand. And deference is given to the BIA when they're interpreting the Federal statute. But they adopted the definition of sexual abuse of a minor, which is quite broad, and they stick to it. I don't understand how you get past that. Still requires that we establish the abusive element. Where is that? It's in Madero-Rodriguez-Rodriguez. The court specifies that the treatment, the conduct either needs to be mental or physical maltreatment. So in any case arising out of the Ninth Circuit, we look to see whether the abuse itself is physical or mental maltreatment. Where in the video is this at? Do you have Rodriguez there? Madero-Rodriguez-Rodriguez? Yeah. While you're looking it up, I think Rodriguez presents a simple test by the BIA under which you would lose a nursery call. Yeah, that's your problem. And between the two problems, which do you think is stronger? Well, I think your second problem is stronger, so you've got three and a half minutes. Sedona-Villera is an immigration case, and in that case, the court says that... Will you answer my question? I may not seem to want to give up on that point. This is in Madero-Rodriguez-Rodriguez at 995 and 996. Yes? And they use the term mental or physical maltreatment. Well, it says that this definition suggests that the common use of the term includes a broad range of maltreatment of sexual nature and does not indicate that contact is a limiting factor. I mean, but they adopt, they go ahead and adopt a definition that goes through this analysis, which is quite unfavorable to you. But any case where the BIA is interpreting a criminal statute, which it is doing in my case, there's no deference given to the BIA, and that's the whole thing. It's not interpreting a criminal statute, it's interpreting the IMF, its own statute, where it says for immigration purposes, we adopt a very broad definition of what is sexual abuse. That's what Rodriguez-Rodriguez said. I don't see how you're reading it any differently. Your Honor, can I make one more point, and then I would request on my rebuttal I can answer your question a little bit with more detail. Okay. In Sedano-Villera, the Ninth Circuit, that was an immigration case, held that the Ninth Circuit should follow cases arising, whether it's in the criminal context or the immigration context, in the interpretation of sexual abuse of a minor. In that case, they specifically followed Barone-Medina, which was a sentencing case that did not arise in the immigration context, in order to distill the meaning of sexual abuse of a minor. I'm sorry. In which case? Sedano-Villera. And that site is 324F3D1062. And I'd like to reserve the rest of my time for rebuttal. This was before Freebie? This was a 2003 case. So it was before Freebie. That was a Freebie supersede? 2006 case. The conduct at issue in a Freebie, though, is different than the conduct we have here, where they're requiring sexual intercourse. So in that case, the abuse element would be met, whereas in Mr. Francia's conduct, the statute issue of Mr. Francia's, the abuse element is not met. So... Okay. Why don't you save the half minute you've got for rebuttal. We'll hear from the government. Thank you. Good morning, Your Honors. For the record, I'm Karen Stewart with the U.S. Department of Justice, and I'm representing the Respondent. You'd better speak up. Maybe just pull the microphone. Karen Stewart, representing the Respondent. Your Honor, this case apparently presents an issue of dueling definitions of sexual abuse of a minor. Unfortunately for the Petitioner, the government has the superior position. As we've said in our papers, we rely on the Afridi case, and we're also relying on Perea, which we feel is both of these cases. We feel that the government is completely disposed of this issue. In Perea, the Court reviewed the EIA's instruction and interpretation of sexual abuse of a minor, which, as the Court has noted, is extremely broad, and found that it must defer to it because it was a reasonable construction of the statute. And it was also consistent with the plain meaning of the terms. And that was the case with respect to the term sexual and abuse. The case of Afridi closes the gap or closes the loop because there the Court agreed that the board's construction or refusal to limit the term minor was also reasonable and permissible. So we have then a definition of sexual abuse of a minor, which only requires the use or employment of a child to engage in sexually explicit conduct. Sexually explicit conduct includes the touching of a person's genitals, either directly or through their clothing, with the intent to gratify themselves sexually. We clearly have that in this case when we apply the modified categorical approach. And also, when we look to the statute, the Oregon statute at issue in this case, to the extent that it covers the actions with respect to minors. Do we know what the – do we have any information as to what the actual touching involved here? Or is genitals like the heat that could have touched your breasts? Is that – and that's where we're just assuming that it's? We know from the record, Your Honor, that what was touched was breasts and genitals. Breasts and genitals. Okay. Yes. That's as much as we know, though. That's correct. Okay. And you agree we don't know the age of the minor? That's correct. But we assume it's a day less than 18. Yes. Okay. So what if this – in this four-year gap – or five-year gap, what if this was a high school girl and a kid in, you know, junior college or whatever at the time, and they went out on a date and got into heavy petting? Now, your argument is not only is it sexual abuse of a minor, but it's a crime of moral turpitude. Why would it be a crime of moral turpitude? Why would it be one that involves moral turpitude? It would be a crime of moral turpitude, Your Honor, because the definition of moral turpitude or the elements of it, pursuant to the Morales case, is a wrong, a conduct that is wrong by its nature and contrary to the accepted rules of morality and duties. Well, that's what I'm trying to understand. This is a – what I just described is a common fact pattern that probably transpires around this country many times over. You wouldn't consider all of those kids that are engaged in that kind of heavy petting are committing crimes of moral turpitude that would brand them – be used against them for the rest of their lives? Are you suggesting that? What I'm suggesting is that in this particular case, there is a necessity for there to be an age gap. And even though there's not – it's not an element of the crime, it's an affirmative defense so that we would know we're not talking about someone who is just slightly older, but a matter of three or four years old. Well, Judge Fischer's hypothetical took into play the four years, I believe. Five years. Five years. A girl almost 18 and a young man 23, heavy petting. Now, on the issue of moral turpitude, you cited the Morales-Gonzalez case? Yes. Morales v. Gonzalez? Yes. And is that the case we just received this morning? That's the case, yes, that was received this morning, in which the court said that something that is even much less, which involves a statute where the elements involve sexual misconduct with the child for immoral purposes, and in that case, it was clear that the sexual misconduct would be either by mere words. What was the relationship between the victim and the defendant in that case? That is a detail that escapes me at the moment, Your Honor. Was the case just like ours? I'm sorry? Was the case in the same posture as ours? This was somebody seeking adjustment of status under 1255A? For some reason, I apologize, Your Honor, that my copy of the case is eluding me. It's always good to read these cases before you get into court. I beg your pardon? It's always good to read these cases before you get into court. You're likely to be asked questions about them. Yes, Your Honor. That's called preparation. I assure His Honor that I have read the case, and I wanted to. Well, then you've got to read it again. I need to. You've got to read it enough so that if somebody asks you questions about basic facts in the case, you're able to answer. If not, you're not doing your client much good standing there, and one wonders why we're paying for you to come out from Washington. I understand, Your Honor. I'm sorry? I understand. You will discuss this with your supervisor, won't you? Yes, sir. Okay. Morales was a case where the crime had the element was that the conduct was committed for an immoral purpose. So that was part of the statute under which he was convicted. Now, that's not present here, is it? That's not an element of the offense that he has been convicted of. The ---- Is that correct? I would say that there is an immoral ---- there is immorality involved in ---- That's a value judgment. The statute, I believe, if I'm correct, the Washington statute required that it be for an immoral purpose, the touching or the activity for an immoral purpose. Is that the statute under which this person was convicted? No. The elements of the statute under which Mr. Francia was convicted requires nonconsensual sexual contact with a minor. Okay. So at least in my hypothetical of the teenage dating, it was nonconsensual. That's why you would say my hypothetical was not applicable to this case, because in my hypothetical, they were just teenagers out on a date. Well, she was a teenager, and he was in his early 20s. Yes. And in the reason why, apparently, this kind of age discrepancy exists is because the ---- of the legislative purpose to avoid exploitation of a minor, which ---- I understand. I understand. Can't even be done by someone who's 4 years. We're not attacking the wisdom of the law. We're just asking if it comes to moral turpitude on the adjustment of status prong of this case. Yes. The law might be perfectly good, but it might not involve the kind of moral turpitude to deport this gentleman. Well, in Morales, though, the question of immoral purpose was to be satisfied by any sexual misconduct, and to the extent that we have someone who's involved or engaged in nonconsensual touching of a person who is a child, then that's sexual misconduct. Thank you. You're out of time. Is Mr. Lindemann your supervisor? I'm sorry? Is Mr. Lindemann? I see Mr. Lindemann's name on the brief. Yes. Is he your supervisor? Is he still there? He is still there. Okay. Would you tell him to listen to the tape, the link of this argument? I want him to listen to it and tell him that we expect government counsel to be better prepared when they appear before us, and that that's part of the responsibility of a supervisor is making sure that lawyers that he sends into the courtroom know what they're doing. Okay? And if he deems it appropriate, he might send us a letter explaining what steps he's taking to ensure that counsel in the future are prepared for appearing before court, our court. Thank you, Your Honor. Okay? Yes, sir. Thank you. You will discuss this with Mr. Lindemann. I will. I hope that you're right. I won't say Mr. Keisler. I won't bother Mr. Keisler with it, but Mr. Lindemann, I think, needs to know. Okay. Thank you. Yes. We're now here. We have 30 seconds of rebuttal left. I just have four points I'd like to make. What do you make of this case that the counsel was discussing? Morales. Morales. The new case, Morales. Well, for a crime involving moral turpitude, the conduct needs to be shocking, and it's based on contemporary moral standards. And under Valencia and the Lopez-Solas cases, because this conduct is just minor. What do you make of Morales? Did you understand the question? Well, it's distinctive from our case. Okay. Well, tell us why. Because of the statute being very broad, the Oregon statute, and because the minor is just shy of 18. Okay. Thank you. Okay.
judges: Kozinski, Fisher, Guilford